GLENN F. MEIER, ESQ.
Nevada Bar No. 006059
gmeier@nvbusinesslawyers.com
**MEIER & FINE, LLC**
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada  89102
Telephone:      (702) 673-1000
Facsimile:      (702) 673-1001

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

-o0o-

| | |
|---|---|
| ERIC ROUL, an individual, and ERIC ROUL, Trustee of the ERIC ROUL TRUST, | Case No.:  2:13-cv-01686-GMN-CWH |
| Plaintiffs, | **MOTION FOR DEFAULT JUDGMENT** |
| *vs.* | Fed. R. Civ. P. 55 |
| GEORGE C. GEORGE, an individual, MICHEAL MATHIAS, and individual, and DUAL DYNAMICS, LLC, a Nevada Limited Liability Corporation, DOE INDIVIDUALS 1 through 10; and ROE CORPORATIONS 1 through 10, | |
| Defendants. | |

COMES NOW Eric Roul, as Trustee of the Eric Roul Trust, ("Plaintiff") by and through his attorneys of record, Meier & Fine, LLC, and moves the Court for entry of a default judgment.

///
///
///
///
///
///
///
///
///

File No.: 1716.001

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

1      This Motion is based on the attached Memorandum of Points and Authorities filed and

2 served concurrently herewith, the Complaint and all exhibits attached thereto, and the

3 Declaration of Eric Roul, all pleadings and papers on file herein and upon such oral argument

4 and documentary evidence as may be presented at a hearing on this Motion that the Court may

5 set.

6      Dated: December 20, 2013.

7                             MEIER & FINE, LLC

8

9                             */s/Glenn F. Meier*
                            GLENN F. MEIER, ESQ.

10                             Nevada Bar No. 006059
                            **Meier & Fine, LLC**

11                             2300 West Sahara Avenue, Suite 1150
                            Las Vegas, Nevada  89102

12                             *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEIER & FINE, LLC**
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Based on the representations and promises of Defendant George C. George, ("George"), Plaintiff provided $886,000.00 to the Defendants herein.  After Plaintiff learned that George was incarcerated, Plaintiff demanded the return of $860,000.00 ("Deposited Funds"). George remains incarcerated, and was served with process in this civil action.  George has not answered, defended, or otherwise appeared in this civil action.  Prior to seeking entry of default, Plaintiff provided George with notice of their intent to take default (see Docket 32).  Out of an abundance of caution, Plaintiff also provided an attorney who Plaintiff understood to be representing George on his criminal charges with notice of the intent to take default.  On November 7, 2013 that attorney advised undersigned counsel that he did not represent George in connection with this lawsuit.  See Declaration of Glenn F. Meier, Esq. attached hereto as **Exhibit 1**.  Accordingly, Plaintiff moved for, and the Court entered a default against George (see Docket 34).    Plaintiff seeks entry of a default judgment against George, in the amount of the Deposited Funds, plus punitive damages, and interest.

**II.     FACTS ALLEGED IN COMPLAINT AND PRESUMED TRUE[1]**

This case concerns a scheme to defraud Plaintiff, perpetrated by George with the aid of Defendant Michael Mathias ("Mathias") and Defendant Dual Dynamics, LLC ("DDL").  The facts alleged in the Complaint as recited below are essentially undisputed by any of the Defendants hereto, and through the default of George, are uncontested by George.[2]  A copy of the Complaint and the Complaint's exhibits are attached as **Exhibit 2**.  While the facts of this case are alleged in detail in the Complaint and other filings of record in this case, the following summary is provided for the Court's convenience in evaluating this Motion.

---

[1] See Section IV(A), Legal Standard, *infra*, (upon default, facts alleged in complaint are presumed to be true).

[2] The facts contained herein are those alleged in the Complaint.  Additional facts have since been developed as stated in Plaintiff's Motion for Reconsideration (Doc. #10) and the Supplement to the Motion for Writ (Doc. #11).

File No.: 1716.001

Plaintiff Eric Roul met Defendant George in March of 2013. (Compl. ¶ 11) George claimed to be a sophisticated real estate investor with extensive experience and knowledge that enabled him to turn large profits. (Compl. ¶¶ 11, 13.) George made multiple false representations to Roul in order to encourage Roul to make a number of purported "investments" with George. (Compl. ¶¶ 11 - 14, 18, 23 – 25, 31 – 33, 35, 36, 41 – 44.) Over the course of several months, George obtained a total of $860,000 from Roul through these fraudulent claims. *Id.* George maintained that these funds would be used as capital for various real estate programs and also to fund the purchase of a casino property in Las Vegas. *Id.* In all cases, these claims by George were false (Compl. ¶ 54), George was aware they were false and George made these claims with the intention of wrongfully obtaining funds from Roul. (Compl. ¶¶ 55 – 56.) Plaintiff justifiably relied on George's misrepresentations, and was damaged in the amount $860,000.00. (Compl. ¶¶ 57-58.)

Upon returning from a vacation in July 2013, Roul learned that George was in jail. George began requesting that Roul provide George with additional funds to allow him to make bail. (Compl. ¶ 51.) During the course of these conversations, George acknowledged receiving the $860,000.00 from Roul and agreed to return it. (Supplemental Roul Dec, Docket #10-3, ¶ 3.) During these conversations, George still sought to further defraud Roul, promising that Roul's money would "double and more" but that he could not return Roul's money until he got out of jail on bail. George requested Roul to contribute $75,000 towards George's bail. (Roul Dec, Docket #5-1 at, ¶ 39, lns. 22-23; see also ¶ 41 at lns. 22-23.) Roul however was not willing to send additional funds to George and initiated this action to recover the property wrongfully obtained by the Defendants.

George's false representations were made with oppression, fraud, and malice. (Compl. ¶ 59.) At all relevant times, from March 2013 through August 2013, Plaintiff was the rightful owner and was entitled to possession of the Deposited Funds. (Compl. ¶ 93.) Plaintiff demanded the return of the Deposited Funds, Plaintiff has refused to return the Deposited Funds, thereby

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

denying and depriving Plaintiff of the use of the Deposited Funds. (Compl. ¶¶ 95-96.) George's deprivation of Plaintiff's Deposited Funds was oppressive, fraudulent, and malicious. (Compl. ¶¶ 98.)

### III.   PROCEDURAL POSTURE AND ADDITIONAL EVIDENCE SUPPORTING FRAUD AND CONVERSION CLAIMS

Plaintiff filed the Complaint on September 13, 2013 (Doc. # 1). The Complaint alleges 14 claims for relief based primarily on fraud. The Complaint seeks damages plus interest, punitive damages, the imposition of a constructive trust, restitution, costs and attorneys' fees, among other relief. [3]  George was served with copies of the Summons and Complaint on October 15, 2013 (See Doc. #13).

Plaintiff filed *ex parte* motions for injunctive relief and for writs of attachment attempting to secure the Deposited Funds. The Court initially denied the request for injunctive relief, but Plaintiff moved for reconsideration (Doc. #10) and provided additional evidence supporting the allegations in the Complaint in Plaintiff's request for relief. See Declaration of Roul (Doc. # 6-1), and Supplemental Declaration of Roul (Doc. # 10-3) copies of which re attached hereto as **Exhibits 3 and 4.**   The Roul Declarations provide additional factual detail consistent with the facts alleged in the Complaint. (See generally, Declarations, **Exhibits 3 and 4**.)

Based on the additional facts, the Court reconsidered the request and Court granted equitable relief (Doc. # 17, 6: 2-3, 20-21). The Court also granted Plaintiff's request for writs attaching the Deposited Funds, if any, in certain accounts (Doc. # 20).

Plaintiff filed a Motion for Entry of Clerk's Default on November 13, 2013 (Doc. # 33).

Plaintiff obtained a Clerk's entry of Default against George on November 14, 2013 (Doc. # 34).

///

///

---

[3] The Court granted equitable relief on November 6, 2013 (Doc. # 29).

File No.: 1716.001

Defendants Mathias and DDL essentially agree that the facts relevant to this Motion are undisputed. <u>See</u> Opposition to Ex Parte Motions, Doc. #23, 2:22-24, ("The Defendants [Mathias and DDL] stipulate to the use of the facts as set forth in Plaintiff's Motion…").

Accordingly, there are no factual issues in dispute and therefore, Plaintiff's fraud and conversion claims are established by clear and convincing evidence, and the Court may enter a default judgment against George on the fraud and conversion claims for relief.

## IV.    RELEVANT LEGAL AUTHORITIES

### A.    DEFAULT JUDGMENT

The Federal Rules of Civil Procedure provide that:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a).  In addition, unless the claim is for a specific sum, "[a] party must apply to the court for a default judgment…." Fed. R. Civ. P. 55(b)(2).

Whether default judgment is entered is a matter of the Court's discretion. <u>See</u> <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980). The Court may consider the following factors: (i) the possibility of prejudice to the plaintiff; (ii) the merits of plaintiff's substantive claims; (iii) the sufficiency of the complaint; (iv) the sum of money at stake in the action; (v) the possibility of a dispute concerning material facts; (vi) whether the default was due to excusable neglect; and (vii) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. <u>See</u> <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Application of these factors to this case is discussed in Section V(A) below. However, because the standard is discretionary, default judgments are more often granted than not. <u>See</u> <u>PepsiCo., Inc. v. Triunfo-Mex, Inc.</u>, 189 F.R.D. 431, 432 (C.D. Cal. 1999).  Where a defendant has failed to respond to the complaint, the court presumes that all well-pleaded factual allegations relating to liability are true. <u>See</u> <u>Geddes v. United Financial Group</u>, 559 F.2d 557, 560 (9th Cir. 1977); <u>Televideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987).

**MEIER & FINE, LLC**
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

1

### B.   ELECTION OF REMEDIES

Fed. R. Civ. P. 8(d)(2) states, in pertinent part, "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  To the extent that claims alternatively pled give rise to the same damages, plaintiffs may only make a single recovery, with the court having the ultimate authority to elect between the alternative theories.  Stabel v. Barsky, 2013 U.S. Dist. LEXIS 54761, 15 (D. Nev. Apr. 17, 2013); Am. Gen. Life Ins. Co. v. Munshi, 2012 U.S. Dist. LEXIS 153094, 18 (C.D. Cal. Oct. 24, 2012) ("the election-of-remedies doctrine is designed to prevent double recovery for a single injury, but it does not prevent a party from pursuing multiple claims against multiple parties until full satisfaction is had.") quoting GeoVera Specialty Ins. Co. v. Rogers, 2012 U.S. Dist. LEXIS 37169, 3 (E.D. Ark. Mar. 20, 2012).

### C.   ELEMENTS OF FRAUD CLAIM

Under Nevada law, a claim for fraud requires proof of: (1) a false representation by defendant, (2) defendant's knowledge of the falsity of his representations; (3) defendant's intent to induce plaintiff to act or refrain from acting upon the misrepresentation; (4) plaintiff's justifiable reliance on the misrepresentation; and (5) proof that plaintiff sustained damages as a result.  Barmettler v. Reno Air, 114 Nev. 441 (1998).  The burden of proof for a fraud claim is clear and convincing evidence.  Barmettler v. Reno Air, Inc., 114 Nev. 441 (1998).

### D.   ELEMENTS OF CONVERSION CLAIM

Under Nevada law a claim for conversion requires proof: (1) that the defendant committed a distinct act of dominion wrongfully asserted over the plaintiff's property; (2) that defendant's act was inconsistent with the plaintiff's rights; and (3) to the exclusion of plaintiff's rights. Evans v. Dean Witter Reynolds, Inc. 116 Nev. 598 (2000).  Liability for conversion is predicated on general intent, which does not require ill intent and is not excused by good faith or lack of knowledge.  Winchell v. Schiff, 193 P.3d 946 (Nev. 2008).  A conversion claim must be proven by a preponderance of evidence.  See e.g., Solomon v. Cutler, 2010 U.S. Dist. LEXIS 110813, 2 (D. Nev. Apr. 8, 2010) (conversion requires preponderance of evidence).

### E.   PUNITIVE DAMAGES

Nevada statutes provide for the award of punitive damages in certain cases.  NRS 42.005 states:

> [I]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, *in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant*. Except as otherwise provided in this section or by specific statute, an award of exemplary or punitive damages made pursuant to this section may not exceed: (a)  Three times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more…

NRS 42.005(1) (emphasis added).

Pursuant to NRS 42.001:

> Fraud means an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his or her rights or property or to otherwise injure another person.

NRS 42.001(2).

"NRS 42.001(3) defines express or implied malice as 'conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others.'" Evans v. Dean Witter Reynolds, Inc., 116 Nev. 598, 612 (Nev. 2000).  Fraud and conversion claims may support an award of punitive damages.  Id.

Punitive damages may be also included as part of a default judgment when fraud is proven by clear and convincing evidence.  See, e.g., Kim v. Kearney, 2012 U.S. Dist. LEXIS 75202, 5 (D. Nev. May 30, 2012) (denying punitive damages in default judgment for lack of proof of fraud by clear and convincing evidence).

### F.   INTEREST ON JUDGMENT

Nevada statutes also control the accrual of interest on judgments.  NRS  17.130(2) states:

> When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages, which draws interest only from the time of the entry of the judgment until satisfied, at a rate equal to the prime rate at the largest bank in Nevada as ascertained by the Commissioner of Financial Institutions on January 1 or July 1, as the case may be, immediately

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

preceding the date of judgment, plus 2 percent. The rate must be adjusted accordingly on each January 1 and July 1 thereafter until the judgment is satisfied.

As of July 1, 2013, the Nevada Commissioner of Financial Institutions established the prime interest rate in Nevada at 3.25%.   http://www.fid.state.nv.us/Prime/PrimeInterestRate.pdf

### G.    FINALITY OF JUDGMENT

As this case involves multiple claims and multiple parties, the court must consider Fed. R. Civ. P. 54(b) which states:

> Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The application of Fed. R. Civ. P. 54(b) to a situation fewer than all defendants default in an action while one or more of the other defendants appear in the case demonstrates a tension that must be resolved by courts in deciding motions for default judgment.  On the one hand, plaintiffs often have an interest in obtaining a final judgment against defaulted defendants quickly for a variety of reasons.  On the other hand, the presence of an active defendant means the court must be concerned with the potential for entering judgment against a defaulting defendant that is potentially inconsistent with judgment relating to one or more appearing defendants.  Almost 150 years ago, the US Supreme Court held that in circumstances where a judgment against defaulting defendants is likely to be inconsistent with a judgment on the merits in favor of answering defendants, a default was improper.  Frow v. De La Vega, 82 U.S. 552, 21 L. Ed. 60 (1872).  A review of decisions on this issue demonstrates that courts have come up with multiple standards to assist in applying Frow through the years.  The Northern District of California undertook a thorough analysis of decisions in this area in the case of Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995 (N.D. Cal. 2001).

The Court in Shanghai noted that some circuit decisions focused on whether the theories of liability against the defendants alleged liability that was joint, several or joint and several.  194

F. Supp. at 1006.  The rationale behind that focus is that joint liability is much more suggestive of a scenario where different results for the different defendants would be inconsistent.  In contrast, claims of several liability (or joint and several liability) give more rise to scenarios where there could logically be different results for different defendants.  The <u>Shanghai</u> court noted that other courts, including the Ninth Circuit, have extended the application of <u>Frow</u> beyond cases involving joint liability to cases where the defenses of different defendants are closely related or the defendants are otherwise similarly situated.  194 F. Supp. at 1006-07.

Following review of the cases from different jurisdictions, the <u>Shanghai</u> court noted that the apparently different approaches to applying <u>Frow</u> shared a common principle, the desire to avoid logically inconsistent results.   194 F. Supp. at 1008.  As the court noted, "Frow's applicability turns not on labels such as "joint liability" or "joint and several liability," but rather on the key question of whether under the theory of the complaint liability of all defendants must be uniform."  <u>Id</u>.  If however, uniformity of liability is not logically required by the theory of the complaint, courts retain discretion to balance various factors in deciding whether to enter judgment against fewer than all the defendants.  194 F. Supp. at 1008 – 09.  An earlier decision from this District noted that in cases where the claims against the defaulting and non-defaulting defendant are "distinct and easily separated" that default judgment can be entered with less chance of inconsistent results.  <u>Alutiiq v. OIC Marianas Insurance Corp.</u>, 2013 U.S. Dist. Lexis 95607, 8 (D. Nev. 2013).

## V.  <u>ANALYSIS</u>

### A.  <u>DEFAULT JUDGMENT SHOULD BE ENTERED BECAUSE THE UNDISPUTED AND UNCONTESTABLE FACTS ESTABLISH THE FRAUD AND CONVERSION CLAIMS AGAINST GEORGE.</u>

Each of the factors set forth in <u>Eitel v. McCool</u> favor entry of default judgment against George. The first factor, prejudice to Plaintiff favors default judgment.  Plaintiff is without the use of nearly $1 million.  George is incarcerated and subject to multiple prosecutions for fraud based on unrelated facts.  Failure to enter a judgment against George will prejudice Plaintiff because of the likelihood of ever collecting the judgment diminishes as time goes on.

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

File No.: 1716.001

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

The second and third factors favor entry of default.  The merits of Plaintiff's claims, and the sufficiency of the Complaint, as analyzed in detail below each support entry of default judgment against George.  The fourth factor, the sum of money, is nearly $ 1 million, not including interest and punitive damages.  The fifth factor, possible disputed facts, favors default judgment because George admitted that he obtained and kept the Deposited Funds.  There is also absolutely no evidence in the record supporting a claim that any of Plaintiff's funds were actually used to fund investments or that George's various "investment programs" actually existed.  The sixth factor, whether the default was due to excusable neglect favors entry of a default judgment against George because George, and George's criminal attorney were both served, and both failed to file any answer or otherwise raise any defense in this litigation even after being provided with notice of Plaintiff's intent to move forward with default proceedings.  The final factor, favoring decisions on the merits, also favors entry of default, because the facts are essentially uncontested and indisputable.  Accordingly, a decision on the merits will result in a judgment against George.

**B.      ELECTION OF REMEDIES**

Plaintiff's complaint against George pleads both tort and contract theories as permitted by Fed. R. Civ. P. 8.  In this case, Plaintiff seeks entry of judgment specifically as to tort claims of fraud and conversion against George.  The Court has the ultimate discretion on selecting which remedy will apply to this case, and in this situation, the Court should exercise its discretion by allowing Plaintiff to obtain judgment on those two tort claims as opposed to contract claims.  As the Court will recall, while there were written agreements provided by George to Plaintiff, the evidence demonstrates that those were not intended as genuine agreements, but rather as tools to continue to facilitate George's ongoing fraud of Plaintiff.  To allow George to have the judgment against him sound in contract rather than tort would mask the true character of George's behavior in this case.  As contract claims can be meritorious even in situations where the breaching party's conduct is not morally wrongful, a contract judgment would fail to brand George for what he is, a scam artist who repeatedly works to profit by victimizing others.  Additionally, a broader scope of damages, in particular punitive damages, is available under the

1   tort theories of recovery and, as will be shown below, punitive damages are appropriate in this

2   case.  Finally, a judgment for fraud and conversion would prevent George from using bankruptcy

3   laws to escape responsibility for paying the judgment.   For all of these reasons, the most

4   appropriate basis for a judgment against George is the tort claims on which Plaintiff seeks

5   judgment.

6       **C.      FRAUD/INTENTIONAL MISREPRESENTATION**

7       As set forth in detail below, the facts alleged, together with the evidence stated by the

8   Plaintiff in Roul's Declarations, establish the fraud and conversion claims for relief, and the

9   damages therefrom, by clear and convincing evidence.   The uncontested facts alleged in the

10  Complaint and supported by the Declaration of Roul establish, by clear and convincing evidence,

11  each of the required elements of a fraud claim.   Fraud requires: (1) a false representation, (2)

12  defendant knew the representation was false, (3) defendant intended the plaintiff to act upon the

13  misrepresentation, (4) plaintiff justifiably relied on defendant's representation, and (5) plaintiff

14  sustained damages as a result.   Barmettler v. Reno Air, Inc., 114 Nev. 441 (1998).

15      In this case, as well chronicled in the Complaint and supported by the Declarations of

16  Roul, each of the elements of fraud is established by clear and convincing evidence that: (1)

17  George made multiple false representations, (2) that George knew were false, and (3) George

18  made the false representations intending for Plaintiff to act, by providing the Deposited Funds to

19  George, and (4), and that Plaintiff justifiably relied on George's representations, and (5) Plaintiff

20  has been damaged as a result by suffering the loss of the Deposited Funds.   Here, where George

21  is in default, the facts are uncontested and presumed to be true. Televideo Systems, Inc. v.

22  Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).   In reviewing each of the elements underlying

23  a fraud claim, the evidence before the Court demonstrates that Plaintiff has satisfied each

24  element.

25      First, George made multiple false representations.   George misrepresented his own

26  personal economic status, his experience in real estate investing and the existence of multiple

27  purported "investment opportunities" for Plaintiff.  See **Exhibit 3, ¶¶ 2 - 12.**  Most significantly,

28  on multiple occasions George represented to Plaintiff that if Plaintiff provided George with

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

1  funds, that George would invest those funds for Plaintiff and pay significant returns.  **Exhibit 3,**

2  **¶¶ 2-12, 13-19, 20-23, 24-28, 29-33.**  Further, George promised to return Plaintiffs funds, but

3  has not.  **Exhibit 4, ¶¶ 4 - 5**.

4       The elements of George's knowledge and intent are supported by the repeated nature of

5  his false claims as well as by the fact that the purported "investment programs" never existed.

6  Clearly George found Plaintiff to be a lucrative victim of his schemes and he aggressively

7  pursued larger and larger amounts of money from Roul.  This case is quite distinct from a

8  situation where, for example, someone solicits funds for an actual investment which the investor

9  later claims is fraudulent.  A situation such as that could potentially be explained by

10  misunderstanding or some non-intentional tort from the defendant.  Here however, George

11  solicited Roul on several occasions, for increasing amounts of money and for purported

12  "investments" which never actually existed.  Moreover, when Roul demanded return of the

13  deposited funds, George never asserted that Roul had surrendered those funds as part of a

14  legitimate investment.  This fact constitutes a tacit admission by George that the funds were not

15  taken in for investment purposes but, in fact, taken in as part of a scheme by George.   These

16  facts demonstrate by clear and convincing evidence both that George had knowledge of the

17  falsity of his representations and that George intentionally obtained the deposited funds with the

18  intent to deprive Roul of the money by deceit.

19       The record also demonstrates that Plaintiff justifiably relied on George's representations.

20  George made multiple representations regarding his supposed personal wealth and his real estate

21  investment experience.  **Exhibit 3, ¶ 5**.  A good friend of Roul's vouched for George and told

22  Roul that she was making a lot of money investing with George.  **Exhibit 3, ¶ 3**.  Furthermore,

23  George produced purported contracts which appeared to legitimize the "investment programs."

24  **Exhibit 3, ¶ 6.**

25       The final element of fraud is damages.  In this case, George obtained a total of $860,000

26  from Roul.  **Exhibit 3, ¶ 37**.  This fact is uncontested.  Accordingly, there is evidence in the

27  record before the Court to support a default judgment for Fraud in Plaintiffs' favor with special

28  damages in the amount of $860,000.

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

## D.   <u>CONVERSION</u>

Alternatively to the fraud claim, the uncontested facts alleged in the Complaint establish that George has converted the Deposited Funds.  Conversion requires: "a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights." <u>Edwards v. Emperor's Garden Rest.</u>, 130 P.3d 1280, 1287 (Nev. 2006).   When a person requests the return of allegedly converted property, and when the person with the property refuses:

> [It] "is always evidence of a conversion," and if the defendant's refusal "is in disregard of the plaintiff's title, and for the purpose of claiming the goods either for the defendant or a third person, it is a conversion." <u>Robinson Mining Co. v. Riepe</u>, 40 Nev. 121, 161 P. 304, 305 (Nev. 1916) (quotation omitted). "[C]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." <u>Evans</u>, 5 P.3d at 1048. Generally, the issue of whether the defendant converted the plaintiff's property is a question for the fact finder. <u>Id.</u> However, where no genuine issue of material fact remains that the defendant converted the plaintiff's property, the Court may resolve the claim as a matter of law. <u>Pelletier v. Pelletier</u>, 103 Nev. 408, 742 P.2d 1027, 1028 (Nev. 1987) (holding "as a matter of law" that party was liable for converting coins where she admitted she cashed in the coins and spent the proceeds).

<u>Stewart Title of Nev. v. Haenisch</u>, 2006 U.S. Dist. LEXIS 90513, 26-27 (D. Nev. Dec. 7, 2006). The measure of damages is the value of the converted property.  <u>Winchell v. Schiff</u>, 193 P.3d 946 (Nev. 2008).

In this case, where George is in default, the facts are uncontested and presumed to be true. <u>Televideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987).

The Complaint sets forth the elements necessary to establish the conversion claim: it is uncontested that all the Deposited Funds belonged to Plaintiff.  (**Exhibit 2 ¶ 93.**)   It is uncontested that George promised to return all of the Deposited Funds upon Plaintiff's request. (**Exhibit 2 ¶ 95**; **Exhibit 3 ¶ 39**.)   It is uncontested that Plaintiff demanded the return of the Deposited Funds.  (**Exhibit 2**. **¶ 95**; **Exhibit 3 ¶ 39**.)  It is uncontested that George has refused to return the Deposited Funds.  (**Exhibit 2 ¶ 95**; **Exhibit 3 ¶¶ 39, 41**.)

Therefore, it is not disputed that George has converted the Deposited Funds.  <u>Stewart Title of Nev. v. Haenisch</u>, 2006 U.S. Dist. LEXIS 90513, at 26-27.  The amount of the converted

**MEIER & FINE, LLC**
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

1   Deposited Funds is $860,000.00 (**Exhibit 2 ¶ 49**). Accordingly, there is evidence in the record

2   before the Court to support a default judgment for Conversion in Plaintiffs' favor with special

3   damages in the amount of $860,000.

4       **E.**   **PUNITIVE DAMAGES**

5       As noted above, Nevada law authorizes an award of punitive damages in cases where the

6   Defendant commits acts of fraud or malice.  Malicious conduct is 'conduct which is intended to

7   injure a person or despicable conduct which is engaged in with a conscious disregard of the

8   rights or safety of others.'" <u>Evans v. Dean Witter Reynolds, Inc.</u>, 116 Nev. 598, 612 (Nev. 2000).

9   Fraud and conversion claims may support an award of punitive damages.  <u>Id.</u>   As noted above,

10  George's conduct was clearly designed to injure Roul.  Obtaining nearly one million dollars from

11  someone fraudulently is definitely despicable conduct and George's acts towards Roul were

12  definitely taken with conscious disregard of Roul's rights.   The evidence in the record

13  demonstrates that this case is appropriate for an award of punitive damages.

14      In a prior case from the Seventh Circuit, Chief Judge Posner discussed a number of the

15  historical reasons justifying punitive damage awards.  <u>Kemezy v. Peters</u>, 79 F. 3d 33 (7th Cir.

16  1996).   Review of this discussion is instructive in this case as such a review underlies the

17  multiple reasons why a significant punitive damage award against George.  Judge Posner began

18  by noting that compensatory damages do not always fully compensate victims of torts and that

19  punitive damage awards are a way to fill in the gaps in compensation.   79 F3d at 34.

20  Additionally, punitive damage awards fulfill the related interest of deterring tortious conduct.  *Id.*

21  In this case, an award limited to compensatory damages only would not fully compensate Roul.

22  Return of his money alone would not account at all for the extensive costs incurred by Roul as

23  well as the intangible damage which stems from being victim to this type of conduct.

24  Furthermore, given the wanton nature of George's conduct along with his prior background it is

25  abundantly clear that George requires deterrence.

26      Judge Posner goes on to note that punitive damages serve important economic purposes

27  as well by making it less likely that a Defendant can profit from tortious conduct.  79 F.3d 34-35.

28  The discussion particularly notes that where conduct can be easily concealed (such as in this

**MEIER & FINE, LLC**
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

1   case) that punitive damages lessen the likelihood that a fraudster would be willing to commit

2   multiple acts of fraud knowing that he was unlikely to be caught and held legally responsible for

3   each act.  If, in such a case, punitive damages were not available, it would be entirely possible

4   for a fraud scheme to be overall profitable. *Id.*  Imagine a fraud scheme with ten victims, each

5   losing $100,000.  If the Defendant were only discovered in three of those claims and punitive

6   damages were not available, the Defendant would repay $300,000.  However, that would leave

7   $700,000 remaining for the Defendant.  Thus, punitive damages are an important aspect of

8   ensuring that there is no economic incentive for individuals to engage in tortious conduct.

9   Again, given that George appears to be a serial fraudster it is important that he have absolutely

10  no potential economic incentive to engage in this conduct further.

11          Finally, Judge Posner noted that punitive damages serve societal interests in expressing

12  outrage over abhorrent conduct and helping preserve the peace my giving those inclined to

13  commit such conduct disincentive to do so. 79 F3d at 35. Again, these historical reasons behind

14  punitive damages are applicable to this case.  George's conduct is abhorrent and a strong

15  punitive damage award against him would both express that societal indignation.  Additionally,

16  George's conduct indicates he has absolutely no remorse.  See generally **Exhibits 3 and 4**.

17  George needs strong disincentive to forgo conduct such as this in the future.  Given that all of

18  these historical underpinnings would be served by a significant punitive damage award against

19  George, the Court should award punitive damages against George to the fullest extent allowed by

20  law, three times the amount of compensatory damages which, in this case would amount to

21  $2,580,000.00.

22          **F.    INTEREST**

23          Interest is computed pursuant to NRS 17.130(2), from October 15, 2013, the date of

24  service of the summons and complaint, at 5.25% interest as established by NRS 99.040(1)(c)

25  (3.25 % prime rate established by the Nevada Financial Institutions Division, plus 2%).

26  Applying those figures to a principal judgment amount of $860,000 yields an annual interest

27  figure of $45,150 and a daily accrual of $123.70.  The Summons and Complaint were served on

28  George on October 15, 2013.  Fifty seven days have elapsed between service and filing of this

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

1   Motion.  Therefore, $7,050.90 in prejudgment interest has accrued as of the filing of this Motion

2   with an additional $123.70 accruing each day until judgment is entered.   Thereafter, the

3   judgment will continue to accrue interest at the rate of $123.70 per day until satisfied.  NRS

4   17.130(2).

5   **G.   FINALITY OF JUDGMENT**

6          In this case, there is no "just reason for delay" of entry of judgment against George and

7   the Court should therefore exercise its discretion to both enter a default judgment against George

8   and to certify it as a final judgment pursuant to Fed. R. Civ. P. 54(b).  Most importantly, this is

9   not a case where the liability of George and the liability of the appearing defendants (Michael

10  Mathias and Dual Dynamics, LLC) are driven solely by the liability of George.  Initially, it is

11  worth noting that the claims on which Plaintiff seeks judgment against George are plead solely

12  against George and not against Mathias or his business entity.   Thus, there is absolutely no

13  logical inconsistency that would arise from the entry of judgment against George now and a later

14  finding that Mathias and Dual Dynamics were either, not liable to Plaintiff, liable on different

15  theories or liable in lesser amounts.[4]  For instance, a fact finder could determine that Mathias was

16  a full blown co-conspirator with George which would potentially lead to a finding that Mathias

17  was jointly liable with George.   Likewise, a fact finder could determine that Mathias aided

18  George without the same level of intent that George had in defrauding Plaintiff.  Indeed, the

19  Complaint itself recognizes that to a certain extent Mathias' liability is separate from George's as

20  the complaint does not seek all of the same damages from Mathias as it does from George.

21  Given these factors, some difference in the findings relating to Mathias and George would not

22  only be logical, it would be expected.

23         In light of the fact that the <u>Frow</u> rule does not bar entry of a default judgment against

24  George, the Court should consider whether to exercise its discretion under Fed. R. Civ. P. 54(b)

25  to certify such a judgment as final, in other words, the Court must consider whether there is any

26  _____

27  [4] While Plaintiff acknowledges the potential for different findings on liability between George on the one hand and
    Mathias/Dual Dynamics on the other, nothing in this motion should be construed as an admission of any kind

28  regarding the liability of Mathias or Dual Dynamics who, although they have appeared, have yet to answer the
    Complaint.

File No.: 1716.001

just reason for delaying a final judgment against George.  In this situation, time is certainly on George's side.  Any delay in entering judgment will afford George additional opportunities to dissipate or otherwise hide assets that could be used to satisfy the judgment.  Under such circumstances, there is simply no just reason for delay of entry of judgment against George.

Plaintiff has established the claims against Defendant George on the causes of action for fraud and for conversion.  Plaintiff has pled several alternative claims which don't give rise to additional damages beyond the damages underlying the claims for fraud and conversion. Plaintiff elects to take judgment on the fraud and conversion claims rather than any of the remaining claims pled in the complaint.  Accordingly, if the requested default judgment is entered, Plaintiff will dismiss the remainder of the claims against only Defendant George with prejudice.  Accordingly, this default judgment will be a final judgment as to Defendant George.

Therefore, for the reasons set forth above, the Court should proceed to enter default judgment against George and to certify that judgment as final pursuant to Federal Rules of Civil Procedure.

## VI.   <u>CONCLUSION</u>

George has not answered or otherwise appeared in this litigation.  Thus, the Clerk entered default against George.

Based on the foregoing, Plaintiff respectfully requests that the Court enter a default judgment against George, in the total amount of $3,440,000.00, plus pre-judgment interest, and with post judgment interest accruing until the judgment is paid.  A proposed Judgment is attached hereto as **Exhibit 5**.

Respectfully Submitted: December 20, 2013.

MEIER & FINE, LLC

*/s/ Glenn F. Meier*
GLENN F. MEIER, ESQ.
Nevada Bar No. 006059
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada  89102
*Attorneys for Plaintiffs*

**MEIER & FINE, LLC**
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

File No.: 1716.001

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 20, 2013, I electronically filed the above Motion for Default Judgment.

The Foregoing **Motion for Default Judgment** will be mailed **as follows:**

| George C. George,<br>c/o, Washoe County Sheriff's Office<br>911 Parr Boulevard<br>Reno, Nevada  89521 | **MARQUIS AURBACH COFFING**<br>Phillip Auerbach, Esq. (SBN 1501)<br>Vincent J. Vitatoe, Esq. (SBN 12888 )<br>10001 Park Run Drive,<br>Las Vegas, Nevada  89145<br>*Attorneys for Defendants Michael Mathias and*<br>*Dual Dynamics, LLC* |
|---|---|

/s/ Peter Dunkley
Employee of MEIER & FINE, LLC

MEIER & FINE, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

File No.: 1716.001

- 19 -